Good morning, Your Honors. My name is Serge Soney. I represent the appellants in this case. I'd like to reserve five minutes, if I may. Okay. And if you can keep your voice up, please. Thank you. Your Honor, the predicate to any party's obtaining of the extraordinary relief of a temporary restraining order or preliminary injunction is the proof of the validity of its claim, the right that it asserts, and a violation of that right, and then either a balance of the hardships or some irreparable harm. The court should not excuse a plaintiff from identifying the right and proving, in this case, proving the trade dress. In this case, the trade dress that the court found is not the trade dress that the plaintiff claimed. And plaintiff, in its briefing before this court, disavows the trade dress that the court found. It is essential at the very outset for us to have an understanding of what the trade dress is. This case involves wine bottles produced for a niche market using celebrity photographs of Marilyn Monroe and sold as a collector's item. The plaintiffs admitted that in their complaint. They so stated in the temporary restraining order application and in the preliminary injunction briefing. They acknowledge that the essential market that they seek and to which their customers are members is the collector's market. Is the collector's market. They contend that because of the series of pictures that they use, that the earlier bottles attain a significant value over time in the market. Now, if it is a niche product in a collector's market, then the product at issue is not just a bottle of wine or wine itself, but a bottle of wine with Marilyn Monroe's photograph. That's central to this court's determination and was central to the district court's consideration. Because if the trade dress claimed is a packaging trade dress, as opposed to a product design trade dress, then the packaging trade dress can be protected if it is inherently distinctive. However, if it is a product trade dress, it cannot be protected absent a showing of secondary meaning. That's a central concern. Absent a showing of secondary meaning. Secondary meaning. You dropped your voice. I apologize. I'm recovering from a case of bronchitis, so I'll try to maintain it. In this particular case, the court made the wrong turn. It concluded that this was merely wine, rather than a collector's edition of Marilyn Monroe wines, suitable for aficionados of Marilyn Monroe products, collectors of Marilyn Monroe products. Let me stop you on that. Let's suppose that you're right, that the trial court incorrectly determined that the product here was wine with a photograph of Marilyn Monroe, rather than collector's wine, right? What is our scope of review of such factual error? Clear error as to the legal standards to be applied, abuse of discretion as to the grant of a preliminary injunction. So it's clear error. What is – is there any evidence to – do we look to see whether there's any evidence to sustain the finding that Judge Patel made? Because if there is evidence, then it isn't clear error, or do you have a different definition of clear error? Well, in this particular case, given the paper record that existed, this motion for temporary restraining order and preliminary injunction was filed concurrent with the filing of the complaint. So what the court had before it were the allegations of the plaintiff in the complaint and the evidence presented by the plaintiff in connection with the motions and the application. That evidence repeatedly recites that what is claimed is the right exclusively to sell wine products to the collector's market in this niche market of collectors. I may have misguided you. I'm trying to get a verbal formulation of your concept of clear error. Is it the same – are you saying that it's clear error if a reasonable trier of fact would be compelled to find contrary to how the court found, or is there some other verbal formulation such as if there is any reasonable basis for the finding it is not clear error? What's your verbal formulation? I think it is the latter in this case, because it is the burden of the proof of the plaintiff in the first instance to identify its claimed rights and to establish them. And central to that would be a particularized description of the trade dress, which never was provided by the plaintiff, as well as an identification whether what was claimed here is a packaging trade dress or a product trade dress. Those are central tenets. From them flow the question of what standard of law is to be applied in the case, which would ultimately result in the application of fact to law in connection with whether or not a sufficient evidence was presented by the plaintiffs in order to support a showing of either inherent distinctiveness or secondary meaning, as the case may be. Now, in this particular case, there's no question that what the plaintiffs have done is over a series of years used different photographs of Meryl Monroe. And we have demonstrated in our briefing and identified the cases that so say, where you have a constantly changing claim of trade dress, constantly changing dress, the plaintiff has a very significant burden to establish that there has been achieved a secondary meaning. Realize that in 1987, when the plaintiffs first introduced a bottle of wine with Meryl Monroe's photographs, no indication on the bottle or any of its literature that the image of Meryl Monroe was being used as a source indicator. In 1987, no consumer had a basis to conclude that it was serving a source indicative function. It is even more important to recognize the admission of the plaintiff, which in its moving papers and in a declaration of its principles said, we selected the image of Meryl Monroe in order to associate with the style, sophistication, glamour, and sex appeal of that actress, not as a source indicator. He even goes further and says they selected each picture, each image in successive years for that same reason. So you have a situation here where the plaintiff admits, does not claim that they adopted the use of images for a source identifying purpose. It wasn't a Maryland like wine from Napa and not from central coast counties. Not at all. All that they did was use an attractive picture of Maryland in order to associate that this is a sophisticated product. It's a stylish product, not that it is a source identifier. That's an important reality, because in 1987, a consumer would not have known that it was a source identifier. In 1989, they would not. In 2001, they would not. And in 2004, they would not. There's no evidence that there were consumers who developed a belief that all bottles with Maryland's pictures necessarily come from Nova Voids. Does that argument go to anything other than secondary meaning?  That goes principally to secondary meaning, yes. But only to the secondary meaning question? Well, it also goes to the functionality issue. Yeah, because if we're talking trade dress, we don't need secondary meaning, correct? I'm sorry? If we're talking trade dress, my voice is the one that's dropping, we don't need secondary meaning. We absolutely do, if it's a product trade dress. If it's a product trade dress, Wal-Mart versus Samara, Supreme Court, it says that if you are talking about a product configuration serving as a trade dress, then it cannot ever be inherently distinctive, because it is inherently descriptive of the product. A bottle of wine with Maryland's picture is inherently descriptive of a collector's edition Maryland wine. A bottle of wine without the picture isn't a Maryland collectible. Consequently, this is a product configuration case. This is not just any wine in any bottle. This is wine in bottles associated with Maryland for the Maryland collector's marketplace. Inherent distinctiveness can only be the hook if it is a packaging design trade dress, as opposed to a product design trade dress. This is not a packaging design trade dress case, this is a product design case. And consequently, it matters whether or not the image serves the functional purpose of associating the wine with Maryland collectors and Maryland collectors' interest of affinity association with Maryland, all things Maryland, collecting all things Maryland. That is what the essence of the plaintiff's business has been. You cannot, you have to have a consistency of the use of the mark in order to develop a trade dress. There was no consistency of the use of the mark. The pictures changed year to year to year. On that one, I think I have to disagree with you. Of course, they did change year to year to year, but they show up in such a consistent format that it's like I've used a blue-tinted picture and a red-tinted picture and so on, but always of the same image. On that one, I have to say that the shifting is so minimal that it's very clear to me as I look from one picture to the other, one year to the next, that we're talking about the same, essentially, consistency. Essential configuration or branding. So on that one, I have to say I disagree. On that point, I have to say I disagree. May I direct the Court to the record? Because I think what the Court is, what your Honor is perhaps mistaken about, there were three lines. The Maryland Merlot line involved a different image on the bottle each and every year. Correct. The Cabernet line was used, two images were used for five or six years at a time. Correct. With color changes. Correct. Normagene line, no, I saw every one of those pictures. Right. Each one of those was a different picture. Yes, I saw every one of them. And the Velvet Collection image was a different picture in the first two years and then repeated thereafter. I'm familiar with those pictures. Okay. So in fact, we don't have a consistent, repeated use of the same picture year to year for 20 years. We just don't have that in this case. No, I understand we do not. I'm sorry? Yes, I understand that we do not. So consequently, the issue of whether a consumer acceptance or understanding or expectation arises out of the use of a particular picture cannot have been created from a constantly shifting trade dress claim. In addition, the use that was made by the plaintiffs was subservient to and made pursuant to licenses from both the copyright owners of the pictures and the alleged owner of the right of publicity, the right to use the image at all, Merrill Monroe LLC. They refer to it as the Monroe Estate. It's not the Monroe Estate. But realize that in this case, the plaintiff asserted word marks, Merrill and Merrill Monroe, and asserted the image marks. The court declined to apply the word marks or use that as a basis for trademark or for the injunction, because they lacked standing. They were a non-exclusive licensee and lacked standing as to the word marks. The plaintiff has not contested that. It is also true that as to the right to use images of Merrill and Merrill, they were a non-exclusive licensee of Merrill Monroe LLC. And yet the court failed to apply the same standing requirement that would have made it impossible for them to pursue a trade dress claim here. The trade dress arises from the use, successive use of different images of Merrill Monroe, all of which was pursuant to the license agreement, which was a non-exclusive agreement. They did not have a right to assert it. So we submit to you that at least standing would have precluded the establishment or their right to bring this claim or to prove their claim. In addition, the constantly shifting designs would have made it impossible for them to have established secondary meaning. And then we look to the evidence that was presented to the court, and there is no evidence of any consumer association. Here's what the evidence was. There was the self-serving declaration of Mr. Holder. I think two more. You know, declarations are almost always self-serving. Always self-serving, yeah. So you can just say declaration. Certainly. There was a declaration of Mr. Holder in which he concludes our link status, we've used images of Merrill consecutively and continuously for 20 years. We've advertised and promoted and we've made sales. He provides the gross sales amount for a 20-year period and the gross advertising amount for 20-year periods. He does not identify on an annual basis, and he does not show that any of the press, any of the consumer reactions, establish that there is an association in fact between the images and the source identifying significance of those pictures. He doesn't do that. Consequently, it was wrong for the court to simply have let him go pass go and collect 200 to have asserted his claim of a valid trade dress. There was no showing. This is extraordinary relief at the outset of a case. The plaintiff has the burden of establishing a valid trade dress. They didn't do it. Could I ask you about the evidence? Certainly. It seemed to me the strongest evidence on your side was what the line sold for, which seemed to be well in excess of its likely value as wine. Now you have a quotation from Newsweek on that, a quotation from the Wine Edition on that, and you have a quotation from the Tampa Tribune, all of which is, you know, in the realm of secondary information. Now you do have a statement from Robert Holden. Nova produces relatively small quantities of the Maryland wines, and as a result their value as collectibles has been steadily and substantially has risen steadily and substantially over time. Now, do you have any better, I mean, the Holden statement is evidence. Is there anything else you want us to look at as to the value of the, to show that it's a collectible rather than the wine? Certainly. The Tampa Tribune article I think is particularly telling, and that appears at ER 172. And what do you think the standard would be for the district court in accepting that as evidence? It was presented by the plaintiff. It was presented in support of their case. It is independent of, if your court will allow me to use the term again, a self-serving interested party declaration. Under those circumstances where it is the plaintiff's burden of establishing that they have a right and they have in their record themselves introduced evidence that undermines their own showing, I would submit to you that the court should have said, I don't think you've made out your case. Certainly not on a preliminary injunction. Maybe you can prove it at trial, but on a preliminary injunction, when you're seeking the result of effectively excluding a competitor from participating in the Merrill Monroe collector wine business, you ought not to be allowed to do so on such skimpy claims. How about the wine addition? Who introduced that? I believe the wine addition was also introduced by the plaintiff. Virtually all of these articles were really within their control. Remember, this was brought at the outset of the case before any discovery occurred, without prior to the filing of the action any specific, particularized identification of what intellectual property rights were being asserted. There was a letter exchanged between the plaintiff and the defendant's counsel and the defendants in which there was a generalized claim, we own intellectual property rights, don't do this. There was no specific identification that our claim is that we own a trade dress in any use of Maryland pictures on wine, which is what the court said and what the plaintiff has now disavowed. What the plaintiff said in their complaint is that the Monroe image marks constitute a family of marks, the plurality of which all feature Maryland's image and likeness and used in connection with Novus wines. Now, for there to be a family of marks, each one of the marks must stand the test of time and be proven to be a trademark. There is no evidence that any singular picture of Maryland Monroe used in Novus wine satisfies the criteria of established secondary meaning, much less that they as a family do. And the district court was simply wrong in letting them ---- Is the district court also wrong in its statement, although secondary meaning is not required to protect an inherently distinctive trade dress? I'm just reading from the district court's opinion. Is that an incorrect statement? It is partially correct. What the court ---- It is true that if a mark is inherently distinctive, secondary meaning is not required. By mark, you mean trade dress? A trademark or a trade dress. A trade dress is a subspecies of a trademark. Consequently, if a mark is inherently distinctive, you don't need secondary meaning. But the Supreme Court has taught us that if it's a product configuration mark, it by definition can never be inherently distinctive. Consequently, you always must prove secondary meaning. And that's where the court made the mistake. I see where you're going. Why don't we listen to the other side? You've got 20 seconds left. Now it's keen. Let's hear from the other side, and we'll make sure you have a chance to respond. Thank you very much, Your Honor. Good morning, Your Honor. My name is Tony Lewin, and I'm proud to represent Nova Wines. Let me first ---- As distinct from some of your other clients, of whom you're not proud? Let's not go there, Your Honor. I shouldn't tease. I'm sorry. It's the last case. Feel free. And if you go far enough, you might tease out of me some of my comments about this case being a case about trade undress. Your Honor, let me just touch briefly on the standards for preliminary injunction. And we have briefed, I think, comprehensively all of the arguments that were raised on this appeal. The appellants have attacked every element of our proof. They have raised numerous new issues that don't go to our proof, but to why this kind of trade dress could not really be protectable. The only thing they didn't challenge was jurisdiction. And we heard this morning, for the first time ever, a new argument not on appeal, about standing, which, in effect, goes to the court's jurisdiction. I don't want to address everything I've covered in the brief. I want to touch on the first misstatement that we heard about, that my client is somehow required to prove the validity of its trade dress as a condition of getting preliminary relief. That is not the standard. The standard was ---- This is a classic case, both for trade dress infringement and for preliminary provisional relief. My client met the sufficient showing to protect itself during the pendency of litigation. And the lower court properly found that my client met both standards, a probable success on the merits and the balance of hardships tipping in its favor, or the alternative test, serious questions going to the merit and the balance of hardships tipping sharply in my client's favor. So my client was not established, not required to establish to the level of jury proof, which we will, I'm sure, be back here talking about in a couple of years, all of the elements of the claim. We showed probable validity of the claim. The appellant has tried to make the case today that the court made a legal error by concluding that our trade dress was inherently distinctive. If I may, Judge Fletcher, speak to the point, the question you asked, what is the standard? Trade dress is now, since the two pesos case in 1992, treated as trademark. Upon a showing that the trade dress is inherently distinctive, there is no requirement to show secondary meaning. Since the Walmart case came out, there's two carve-outs from that. The two carve-outs for trade dress would be color. It can never be inherently distinctive. The other one, which was described here not quite precisely as product or product configuration, is in fact product design. In the case of a product design, you cannot, as the plaintiff, rely on inherent distinctiveness. This is not a case of product design. This is a case of product packaging. The Walmart case makes clear that that is still. What are we to make of the argument from the other side that this is not a product identifier, trade dress packaging of wine such that, you know, so-and-so's winery, it's got a picture of the winery, or, you know, whatever it is, or Clodovale, they've got a picture of those women, you know, whatever it is. But instead, this is a collector's item, and the pictures here are more than product identifiers, but they really are a totality of product that is wine plus label that is no longer simply identifying wine. What do you make of that argument, and how do you respond? Your Honor, we're talking about labels on wine bottles. Of course we are. And this is, it's a classic, as the district court noted in the decision. It's the classic place to note the source of the wine. But the photograph of Marilyn Monroe doesn't tell me whether the wine is old or Cabernet or Merlot or anything else. It doesn't even tell me what she liked to drink. I mean... Your Honor, trade dress... It doesn't tell me anything about the source, does it? In that sense, it's an arbitrary mark. And an arbitrary mark is a strong species of mark, and that's why the category of mark that is inherently distinctive. There is no natural association between a picture of Marilyn Monroe and a bottle of wine. That's why it is protectable as a mark, because it's inherently distinctive. The consumer can see... Marilyn Monroe's photograph, does it tell the consumer whether the wine is from France or Chile or Napa? No, but no trademark or trade dress does that necessarily, neither does the word mark gallo. You have to look for the rest of the product label. Let me talk about the trade dress generally. There was an argument here that we have not properly defined the trade dress. The trade dress is the total commercial impression. And I think in the division sports case out of this court talks about it in terms of the ultimate... I don't have the precise language. The ultimate image that's presented. The image that's presented here is a bottle of wine with under the mark one of four marks, Marilyn Merlot, Marilyn Cabernet, Velvet Collection. It has an attractive picture of Marilyn Monroe or Norma Jean Young Marilyn Monroe on it. It has the stylized trademark signature licensed from the Marilyn Monroe Estate, MMLLC. It has the incontestable word mark Marilyn Monroe or Norma Jean as the case may be. And then it says, of course, consistent with all labeling requirements, Napa Valley Appalachian there. Yeah, but this reminds me that you're not selling the wine. It's like selling the steak. You're not selling the steak. You're selling the sizzle. Here you're not selling the wine. You're selling the sizzle of Marilyn Monroe, aren't you? Your Honor, Jerry Garcia has come out with a line of Jay Garcia labels, which have pictures of artwork that's generated by Jerry Garcia. It's still wine. It's a way to capture the consumer's attention. I thought you were going to talk about his ties. You know, from the labels, they look like they could be as wild as ties. But, Your Honor, the commercial impression is the label. It is a source identifier, but the product that's being sold is still wine. There may well be some people who collect it, and, in fact, the submissions show that this has become popular among some collectors. But to talk about it, therefore, being a sale of a picture is completely wrong. It's an alcoholic beverage that's subject to all the regulation of state or federal authority. Well, of course, but I take it you introduced this thing. It's on the ER-175, which has the heading Marilyn Monroe. It says it sells for $500 a bottle. Now, I find it extremely hard to believe that anybody pays that much for your wine. It would only be because it's a collectible that they would want to do that. If I may, Your Honor, let me go through the entire product. No, answer that question. Would somebody pay $500 for that bottle of wine, the Marilyn Monroe, if it wasn't a collectible? There's a gift set. A particular item was sold as a three-package set. A gift set. Hear me out, Your Honor, if I may respond to the question. There's a single bottle, a magnum, and a double magnum. This was the product, by the way, that was introduced by Tom Kelly Studios, one of the appellants. Please don't go off on some other tangent. Tell me why people would pay $500 if it didn't have the sizzle of Marilyn on it for the person to keep as a collectible. It's a gift. It's a collectible. It's drinkable as wine. And I'm not going to disagree. That's a very high price point. It didn't sell well. That's why, after breaking the license agreement with us, Tom Kelly Studios has shopped the velvet collection image and is trying to sell it at a low price point. That makes the non-answer. So if it sells well, I say the evidence in front of me is it's because it's a collectible. What justifies these high prices except it being a collectible? Your Honor, the Marilyn Merlot sells for $27. No, you have introduced all these exhibits showing it anywhere from $250 to $500. And the $500, I'm not sure which product, but it must be the three-set box, which includes a double magnum. It's a huge bottle. It's an unusually packaged bottle. And it was a rare gift item. The bottles, for the most part of the velvet collection, were sold in a single magnum at a much lesser price. That's one item that is a gift market, if you will. Now, that still doesn't make it not wine. And it still doesn't mean my client doesn't have trade dress rights from having sold wine in a lot of different sizes and shapes and a lot of different prices. This is the perfect kind of issue to have a full trial on the merits because we will, when we get there, prevail when they raise that argument. But we need to have the right to protect the trade dress pending the litigation. You're resisting the characterization of these wines as collectibles. I don't say you're denying that they're collectibles, but you're clearly resisting this. What's the consequence for purposes of your case? And I'm not just talking about probable success of the merits. I'm, you know, let's get down to the actual merits that eventually one court's going to get to. If we were to conclude or if District Judge Patel were to conclude that, you know, the wine's pretty good. It's as good as the wine I can get at a nondistinctive label and Safeway for $15 or $5 or $2. Chuck isn't too bad, actually. And a huge amount of the selling price is because of the picture of Maryland and Rome. What does that do to your case? Your Honor, it doesn't ultimately change the result. Because? Because any label, any particular wine might have some kind of fanatic following, either because of there's an Elvis wine out there somewhere, there's a Jerry Garcia wine, there's other wines. But the bottom line is it's still wine and it can be priced any way that my client wants to price it. And it will sell. My client has the business risk of being able to sell at its price point or not. And the Velvet Collection wines, frankly, haven't sold real well. Not like the Maryland Merlot, which is a more moderately priced wine, or the Norma Jean, which is the only non-Napa wine which sells for $10. So it's a – all of the – every single wine has a picture of Maryland Monroe. And as was discussed in the earlier argument by opposing counsel, that is the trade dress. That is the image. And it's protectable. Now, this is probably in the record and I don't know it. I have seen all the pictures. I've paid attention so I can understand what the pictures are in which you sold, the pictures under which Adler Fels was wanting to sell. That I understand. But what I don't know, and you can just tell me, and if he's wrong you can correct, what are the current selling prices for the bottles of wine that your client now has on the market? Not what, you know, not what a 10-year-old bottle sells for, but how much money do they get for selling the wine they're now selling? Okay. Thank you. I think we're beyond the record, but it's all available on the website and I would like to respond to the question. Okay. If it's not on the record, I want to make clear that it's not on the record, but let's hear it anyway. Okay. Norma Jean, $10.50. That's retail? Yeah. Okay. Marilyn Merlot, $27.00. Marilyn Cabernet, $45.00. These are exactly where you would expect those wines to be, Norma Jean not being a Napa Appalachian, the other two being Napa Appalachians. The Velvet Collection does not have a current release. Does your client sell any other wine than these Marilyn wines? They do have one label that they don't publicize heavily. What did you say about the Velvet Collection? The Velvet Collection has not been – there's no current new vintage. There were three consecutive vintages. They are selling the older vintage, I believe, at – I don't know if it's $100 a bottle. It's a low three-figure sum for the – this is, mind you, a magnum. At one point when you were speaking before, you started talking about the image as a mark, as though it were a trademark. You're not arguing that, are you? No. The trade dress, as the appellant stated, is a subspecies of trademark. And trade dress, of course, is broader than trademark. It's broader because, as this Court has said – You didn't tell me the selling price of the wine that your person produces that is not labeled with a Marilyn Monroe photograph. Oh, I think it's very close. The Uvada Merlot sells for the high $20, too. What's it called? It's called Uvada, U-V-A-D-A. And it sells in the high 20s. I don't know precisely. And was that price in any way affected by that movie? I can't answer that one, Your Honor. I just wanted to touch on the Ninth Circuit's language from Vision Sports in stating that trade dress is broader than trademark because it requires – that might not otherwise be subject to registration. And also, it requires the Court evaluating the claim of infringement to look at the plaintiff's total selling image. And that's the standard for trade dresses, the total image to the public. If I may, I would like to also touch on the Rule 28J submission that we sent last week, and I hope the Court received it. There are a complex of claims that Tom Kelly Studios has raised, not merely the challenge to our trade dress here, but the challenge to the Monroe Estate's, MMLLC's, right of publicity that it even exists. My client has built this trade dress by paying license fees to the Maryland Monroe Estate for more than 20 years. My client has done everything it needed to do to have the rights to create this trade dress. During the course of the appeal, the appellant submitted an interim ruling on summary judgment from the Central District Judge Morrow, holding that in fact Maryland Monroe LLC did not have a right of publicity. We submitted last week the ruling on motion for reconsideration where Judge Morrow reaffirmed that ruling. And so the Maryland Monroe Estate's right of publicity remains intact, and we have validly licensed the intellectual property rights. Is that relevant to the question in front of us? It is in that it's an alternative ground. As I put in my, I tried to keep the letter brief to two pages. Yeah, I confess it hasn't yet made it to my desk. I have brought extra copies if it would be helpful. The point is brief. Well, it will lend its way to me eventually. It doesn't change the fact that the district court was right on every ground on every level. But it is an alternative ground, and if a preliminary injunction should be sustained on any ground, it should be sustained. My client has for 20 years had the exclusive right to license the image, the likeness, the right of publicity, the registered trademarks, the registered signature, and has done that. And that's part of the trade dress. How do you meet the point raised by the defendant that you have no consumer surveys showing that there's a likelihood of confusion among your dedicated consumers that they might buy wine from Adelaide Fells if it had photographs of Marilyn on it? That is correct. We did not bring a consumer survey and preliminary injunction. I would cite the court to clamp manufacturing out of this court which states that while consumer surveys are helpful, they're not necessary. We cited that in our brief. But that's a case after trial. Our right can be established without a consumer survey all the way through trial, certainly on preliminary injunction, particularly where there's a need to get to court quickly to prevent infringement. We're not required to bring a consumer survey. Not required. But wouldn't that be the best evidence of whether there really is any deception being practiced on the public? First of all, it would only go to the question of secondary meaning, which we don't have to show. But the court found properly that secondary meaning is established through the continuous use and the publicity and the promotion and the exclusive use that we've had for 20 years. In conclusion, I would just like to reiterate that my client runs a very small business. It's threatened by a large winery acting opportunistically by a photographer that terminated a license with us, is taking a virtually identical photo to the large winery, and they propose to put out an infringing wine. The preliminary injunction could not be more appropriate in a case like this. Thank you. Thank you. Your response. First and foremost, Your Honor, the standing issue is not new. It was raised, it was briefed, and it doesn't challenge this Court's jurisdiction at all. It questions the validity of their claim of ownership of a trade press. If their rights descend from, as they admit, solely from permissions from Maryland Monroe LLC, then they cannot own, and they do not own, the trade press right. They cannot assert it against them. That seems to me clearly wrong. That is to say, if they have proper trade press on that, it does not matter that somebody else might own a copyright. That's a different question. Oh, we're not talking about copyright, Your Honor. Or a licensing right. Well. That is to say, they can establish a trade press if they establish a trade press, and someone else might have the right to license it to them or to somebody else and so on. That is a separate question. I just don't see the relevance. Well, the cases that we've cited, and I can point them out to you again if you wish, but the notion is this. The licensor, Maryland Monroe LLC, claims to have the exclusive right to license the images. It is pursuant to a non-exclusive license from Maryland Monroe LLC that they first even began using the images of Maryland Monroe. On why? Because they are a non-exclusive licensee, they lack standing under trademark law to assert a claim. They could not have generated or created an independent right of publicity or a trade press right if it was obtained pursuant to a license. They simply could not own it. They can't assert it. They lack standing as to it. The contract with Maryland Monroe LLC explicitly provides that the rights belong to Maryland Monroe LLC. Mr. Holder in his declaration admits, and I will cite you to the page ER-130, he admits that the images of Maryland Monroe belong to the Monroe estate, and the right to use images on wine belong to the Monroe estate. So they don't have an independent right. And standing is a crucial issue. If they don't have standing, they can't establish the validity of a trade press. It can't be an injunction. The total commercial impression created by the Norma Jean line is vastly different than the commercial impression of the Velvet Collection, and the Velvet Collection is vastly different from the Maryland Monroe line. Mr. Lewin admits that whether or not it is a product packaging trade dress or a product trade dress is ultimately a question that's going to get reserved for trial. If that is true, then the district court necessarily had to apply the higher standard, the standard of requiring them to prove secondary meaning, before it could find a valid trade dress that it was going to enforce. In this particular case, the only evidence that the court relied upon is a continuous use. Now, let me give you ---- Now, you're 2 minutes and 48 seconds into sort of our time instead of yours. Why don't you calculate, you've got another minute or so, and then you can figure out from there what you want to say. Consider, if you honor Wood, that a winery produces a wine with a label on it with a landscape. The landscape includes a vineyard. Each year, every different vintage, it has a different picture of a wine with a label, landscape with a vineyard, every year a different one. If the district court's analysis is applied, no other vineyard, no other competitor could use a label showing a landscape, any landscape, with a vineyard in it. That's what the court did in this case. Another example, assume a winery produces a label using art deco themes on the label, but uses a different art deco theme for each year. Does that mean that no other competitor can ever use any art deco theme on a label? That is simply not the law. In order for a trade dress to attach, there must be a consistent and regular use of a singular trade dress. That did not occur in this case. We ask for your vote. Thank you. Thank both sides for a very useful argument. Nova Wines versus Adler Fells Winery now submitted for decision, and we are in adjournment. Thank you.
judges: Noonan, Fletcher, Bea